UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE CO., | ) ) ) | CASE NO.3:05CV7012 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) ) | |
| SIMPLEXGRINNELL LP | ) ) | OPINION AND ORDER |
| Defendant. | ) | |

### CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendant SimplexGrinnell LP's ("Grinnell") Motion for Summary Judgment. For the following reasons, this Court grants in part, and denies in part, Defendant's Motion.

### FACTS

Plaintiff's Amended Complaint seeks subrogation for monies it paid to its insured, Belmont Country Club, for damages sustained when a water pipe, constituting part of a fire suppression system cracked, causing water damage to the premises. Grinnell contracted with Belmont to inspect and test the fire suppression system. Grinnell reportedly inspected the

1

system on October 21, 2002, and the damage occurred on January 19, 2003. Plaintiff alleges claims for negligence, gross negligence, breach of contract, and breach of warranty.

### Defendant's Motion

Defendant contends its liability is limited due to a contracted-for limitation of liability clause contained within its contract with Belmont. The limitation clause limits liability to the contract price of Two Hundred Forty-Five Dollars. Also, Plaintiff may not maintain its tort claims when there exists a valid and enforceable contract and any damages are limited to contract damages. In addition, Plaintiff may not maintain its breach of contract action, as the evidence shows Grinnell fully complied with its contractual obligations. Finally, Plaintiff may not maintain its breach of warranty claims. as Grinnell expressly disclaimed any warranties and limited its liability.

### Plaintiff's Response

Plaintiff contends it paid over Two Hundred Thousand Dollars to Belmont to repair the damage caused when a tee fitting on the dry sprinkler system failed due to the expansion of frozen water within the pipes, which were supposed to be devoid of moisture. According to Plaintiff, a dry sprinkler system is used in non-heated areas that may be exposed to temperatures below freezing. The piping in a dry system is devoid of moisture and pressurized. The air pressure prevents water from entering the piping at the main dry valve. Upon activation of the sprinkler the air escapes, allowing water into the piping. When a dry piping system contains a low point, condensation may pool in the low point. It is necessary to drain these low points to prevent freezing. Inspection of dry systems should involve a check of the pitch of the piping to find low points.

Pursuant to Ohio law, dry sprinkler systems must be inspected annually. Every three years a full flow test must be performed. Ohio regulations warn that the test should be performed in warm weather.

In 1996, Grinnell and Belmont entered into a contract to inspect the fire suppression system. The contract contains the following limitation of liability clause:

> Contractor's liability to Subscriber for personal injury, death, or property damage arising from performance under this contract shall be limited to the contract price.

Plaintiff argues the contract at issue contains an assignment clause that prevents assignment of the contract to a third party without written consent of the other contracting party. Plaintiff alleges in 2001, Simplex Time Recorder merged with Grinnell to create a new entity, SimplexGrinnell LP. Belmont never consented to the assignment of the 1996 contract to SimplexGrinnell. In 2001, SimplexGrinnell began inspecting the fire suppression system.

Defendant's inspector admits to conducting a full flow test in late October 2002. He then testified he only drained the main riser and failed to check if other low points existed in the system. The inspector did not enter the attic area where the fracture occurred. Plaintiff's expert testified that Defendant's inspection violated Ohio code requirements and the appropriate standard of care.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the

3

absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## ANALYSIS

### Breach of Contract and Limitation of Liability

Plaintiff contends the alleged assignment of the 1996 contract between Grinnell and

4

Belmont to SimplexGrinnell was never approved by Belmont and is therefore, unenforceable. The language of the contract states, "this contract shall constitute a personal agreement between Contractor and Subscriber and shall be assignable by either party only with the written consent of the other." Plaintiff cites to *Caracciolo v. Bonnell*, (1937) 57 Ohio App. 397 for the proposition that, "a contract for personal service may not be transferred, sold or assigned, without consent of the other contracting party." Defendant contends a merger or corporate name change does not require assignment of contracts entered into by one of the merging companies. In fact, Ohio law expressly states that upon merger, all obligations of the merging entities are assumed by the new entity.

O.R.C. § 1701.82.

(A) When a merger or consolidation becomes effective, all of the following apply:

(1) The separate existence of each constituent entity other than the surviving entity in a merger shall cease, except that whenever a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights in the surviving or new entity, the officers, general partners, or other authorized representatives of the respective constituent entities shall execute, acknowledge, and deliver those instruments and do those acts. For these purposes, the existence of the constituent entities and the authority of their respective officers, directors, general partners, or other authorized representatives is continued notwithstanding the merger or consolidation.

(2) In the case of a consolidation, the new entity exists when the consolidation becomes effective and, if it is a domestic corporation, the articles contained in or provided for in the agreement of consolidation shall be its original articles. In the case of a merger in which the surviving entity is a domestic corporation, the articles of the domestic surviving corporation in effect immediately prior to the time the merger becomes effective shall continue as its articles after the merger except as otherwise provided in the agreement of merger.

(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent

entity, and, subject to the limitations specified in section 2307.97 of the Revised Code, *all obligations belonging to or due to each constituent entity, all of which are vested in the surviving or new entity without further act or deed.* Title to any real estate or any interest in the real estate vested in any constituent entity shall not revert or in any way be impaired by reason of such merger or consolidation. (Emphasis added)

According to Defendant, O.R.C. §1701.82 expressly states that upon merger (as is the case here) all obligations and rights are automatically conferred upon the new entity and no assignment is necessary. Plaintiff has offered no case law demonstrating the necessity of assignment for enforcement by new corporate entities of pre-merger corporation contractual obligations. In addition, Plaintiff's Amended Complaint fails to allege the unenforceability of the contract but expressly states there exists an enforceable contract between Belmont and SimplexGrinnell (Amended Complaint para. 10 & 22). In *ASA Architects, Inc., v. Schlegel,* (1996) 75 Ohio St.3d 666, 673 the Ohio Supreme Court, in citing to O.R.C. 1701.82 held, "[T]he surviving corporation in a merger is responsible for all obligations of the constituent corporation." As the obligations owed to Belmont by Grinnell were transferred by operation of law, through merger, to SimplexGrinnell and not by assignment, the 1996 contract is valid and enforceable. Finally, the cases cited by Plaintiff do not involve mergers and, are distinguishable from the facts in this case. Therefore, in the absence of law or evidence to the contrary, the Court finds the contract between Grinnell and Belmont valid and enforceable against SimplexGrinnell.[1]

Defendant contends that no breach of contract existed because it has complied with all its contractual obligations. The contract requires Grinnell to "inspect and/or test the equipment

---

[1] The parties own actions demonstrate they were abiding by the terms and conditions of the 1996 contract in 2002, automatically renewed annually, under the same terms and conditions of the 1996 contract in performing the same service, providing the same reports and receiving the same amount of money.

6

described herein (one straight gut wet system and one firematic dry pipe system) in accordance with the contract option selected above (automatic sprinkler equipment inspection) and the Contractor's then current Report Form." (Parentheticals added for clarity.) Furthermore, Defendant contends the contract expressly states:

> the Report and recommendation by the Contractor are only advisory in nature and are intended to assist subscriber in reducing possibility of loss to property by indicating obvious defects or impairments noted to the system and equipment inspected and/or tested which require prompt consideration. They are not intended to imply that all other defects, hazards or aspects of the system and equipment are under control at the time of inspection. Final responsibility for the condition and operation of the sprinkler system and/or fire alarm and detection system equipment lies with the Subscriber.

Plaintiff contends, based on expert testimony, Defendant failed to properly inspect the system in accordance with industry standards put forth by the National Fire Protection Association. Specifically, there are factual issues whether Defendant's inspector actually viewed the portion of piping that cracked. Also, there is an issue of fact whether Defendant's inspector's flushing of the system in cold weather caused a moisture build up in the dry piping, resulting in the freezing and cracking of the pipe. There is no dispute the NFPA applies and governs Defendant's inspection of the Belmont sprinkler system. As there appears to be genuine issues of fact whether Defendant fulfilled his contractual obligations, the Court denies Defendant's Motion for Summary Judgment on the breach of contract claim.

Plaintiff contends the written 1996 contract is unenforceable, however, claims the parties operated under an oral, implied contract in fact. A contract may either be express or implied-in-fact. *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney* (1901), 65 Ohio St. 104. "The distinction between 'express' and 'implied-in-fact' contracts is in the form of proof generally used to establish such contracts." *Campanella v. Commerce Exchange Bank,* (2000) 139 Ohio

7

App.3d 796, 806 *citing Stepp v. Freeman* (1997), 119 Ohio App.3d 68, 74. "In express contracts, the parties' express written and oral statements manifest the offer and acceptance and the parties' meeting of the minds." *Campanella*, at 806. "In implied-in-fact contracts, the parties' meeting of the minds is shown by the surrounding circumstances including the parties' conduct and declarations, making it reasonably inferable that the parties intended to create binding and certain obligations." *Id.* Plaintiff offers no evidence there was any meeting of the minds, or that an oral contract existed outside the 1996 contract. The evidence weighs entirely in support of the parties operating under the express terms of the 1996 contract. Therefore, the Court finds no implied-in-fact contract exists.

### Limitation of Liability Clause

Defendant contends, regardless of whether a breach of contract occurred, Plaintiff's damages are limited by the express terms of the contract to the contract price. Plaintiff contends the limitation clause is unenforceable because: it was never assigned to SimplexGrinnell; it is, in fact, a liquidated damages clause and should be treated as a penalty as the contract price is manifestly inequitable and unrealistic; and, SimplexGrinnell was grossly negligent in its inspection. The Court must determine if the clause is a limitation of liability clause or a penalty.

"The limitation of liability is neither a penalty in that it does not normally operate *in terrorem* to induce proper performance, nor is it of the nature of liquidated damages since it does not purport to be a pre-estimate of probable damages resulting from a breach." 5 *Williston on Contracts* (3 Ed.1961) 709-710, Section 781A. This Court finds the clause at issue a limitation of liability, as it does not purport to pre-estimate probable damages but, limits any liability, regardless of potential damages, to the contract price. It is important to note that Ohio courts

8

have routinely blurred the lines between liquidated damages clauses and limitation of liability clauses. In fact, the Northern and Southern Districts of Ohio appear to be in conflict over this issue. However, Ohio courts and this Federal District recognize the distinction between liquidated damages clauses and limitation of liability clauses.

"While viewed critically by the courts, limitation of liability clauses (including exculpatory clauses) may be freely bargained for in Ohio." *Nahra v. Honeywell, Inc.*, 829 F. Supp.962, 969 (N.D. Ohio 1995) referencing *Berjian v. Ohio Bell Telephone Co.*, 54 Ohio St.2d 147, (1978); *The George H. Dingledy Lumber Co. v. Erie Railroad Co.*, 102 Ohio St. 236 (1921); *Schwenck v. Spitzer Marina*, No. 65660, 1994 WL 385972 (Cuyahoga County July 21, 1994); *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826 (Montgomery County 1993); *Royal Indemnity Co. v. Baker Protective Services, Inc.*, 33 Ohio App.3d 184, (Montgomery County 1986). And "[a]bsent important public policy concerns, unconscionability, or vague and ambiguous terms, [such] provisions will be upheld," *Collins*, 86 Ohio App.3d at 832, "so long as the party invoking the provision has not committed a willful or reckless breach." *Nahra* at 970, citing *Berjian*, 54 Ohio St.2d at 158.

In *Nahra*, the Court determined a clause in an alarm company's contract limiting liability to the annual service charge or $10,000 whichever was less, was a limitation of liability clause and was enforceable. Here, there is no relation to, or attempt to fix in advance, Plaintiff's potential damages. Rather, the Two Hundred Forty-Five Dollar limitation of liability cap is the amount paid by Belmont for SimplexGrinnell's services and is directly related to the price of the contract. Furthermore, the evidence demonstrates the parties were sophisticated entities engaged in a commercial contract where no unequal bargaining position existed. Defendant was not the

9

installer nor the manufacturer of the sprinkler system and the contract expressly states that Defendant is not the insurer of Plaintiff's property. Also, Ohio law does not require otherwise.

Even assuming, *arguendo*, this Court were to find the limitation of liability clause a liquidated damages clause, the fact the liability cap directly relates to the price of the contract distinguishes it from *Samson Sales, Inc. v. Honeywell, Inc.*, (1984) 12 Ohio St.3d 27, cited by Plaintiff for the proposition that the clause contained in the 1996 contract would be unenforceable. In *Samson*, Plaintiff's paid Ten Thousand Five Hundred Dollars for an alarm system and service and the liquidated damages clause limited damages to Fifty Dollars.

Having determined that the clause is a limitation of liability, the Court must address whether there exists some valid reason not to enforce the clause. Plaintiff does not argue unconscionability, vagueness and ambiguity in its terms, nor does it argue the contract violates public policy. Therefore, the Court will not address these concerns. The Plaintiff does contend the contract should not be enforced as Defendant was grossly negligent in its inspection. In *Harsh v. Lorain Cty. Speedway, Inc.*, (1996) 111 Ohio App.3d 113, 118, the Court held, in Ohio, "gross negligence is evidenced by willful and wanton conduct, which the Ohio Supreme Court in *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, defined by adopting the definition of "recklessness" found in the Restatement of the Law 2d, Torts (1965). 'The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' 2 Restatement of the Law 2d, Torts (1965) at 587,

Section 500."

As evidence of Defendant's gross negligence, Plaintiff alleges Defendant: was required to visually inspect the sprinkler system, ensure proper drainage after the test and did not do so; failed to inspect the area of piping where the break occurred, as Defendant only "peaked his head" into the attic space where the pipe was located; if Defendant had inspected the pipe in the attic he would have noticed the low points that give rise to pooling of moisture; Defendant conducted the test in October when regulations require tests be performed in warm weather to prevent freezing of water in the dry pipes; and, Defendant failed to inspect the pitch of the pipe as required by NFPA regulations.

Defendant contends Plaintiff has failed to allege sufficient facts to warrant a finding of gross negligence. Defendant alleges they met the NFPA requirements when they inspected Belmont's sprinkler system; the weather was in the mid fifties during the flow test and no freezing temperatures occurred for at least two weeks following the flow test; NFPA does not require Defendant recommend checking the pitch of the pipes annually; Defendant was not required to go into the attic area where the break occurred because it was not accessible; the NFPA expressly states no inspection is required for sprinklers and piping installed in concealed spaces; Defendant's inspector testified that the attic space where the break occurred was inaccessible as there was no flooring; and he peeked his head in and looked around.

Plaintiff's expert report states the area had planking to walk on and was accessible. The deposition of the technician who repaired the cracked pipe is unclear whether there was planking to walk on or whether he had to walk on the joists. The photographs provided by Plaintiff are unclear whether the flooring is suitable for walking on. Gregory Chernisky, assistant manager at

11

Belmont, testified there was flooring suitable for walking on in the attic area at the time the break occurred. Therefore, the Court is presented with genuine issues of fact whether the attic crawl space was accessible under the NFPA, whether Defendant's actions of conducting a flow test in October resulted in the break and whether Defendant's failure to inspect the pitch of the pipes every five years breached the contract. These are all factual issues for the jury to determine in deciding whether the Defendant was grossly negligent, warranting non-enforcement of the contract.

### Negligence

The Court grants Defendant's Motion for Summary Judgment on Plaintiff's claims for negligence, as the duties owed Plaintiff by Defendant are governed by the contract and Plaintiff is only permitted "one satisfaction for his or her injuries." *Seifert v. Burroughs,* (1988) 38 Ohio St.3d 108, 110. In addition, in Ohio, claims for negligence and breach of contract are theories of liability that may be plead in the alternative and when duties imposed upon parties are governed by contract, the recovery is governed by contract law. See *Corporex Development & Construction Mgmt. v. Shook, Inc.,* (2005) 106 Ohio St.3d 412, 414. "[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co.,* 647 f.2d 705, 710 (6th Cir. 1981). Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's negligence claim.

### Breach of Warranty

Defendant contends its contract expressly waives any warranties express and implied. The contract states in pertinent part, "[n]o warranties, express or implied, including, without limitations, warranties of merchantability and warranties of fitness for a particular purpose."

12

Plaintiff contends the nonexistence of an enforceable contract makes Defendant's waiver of warranties unenforceable as well. As Plaintiff does not allege the waiver was unconscionable, or contrary to law, the Court will not address these issues. As the Court has already determined there exists a valid contract, Defendant's Motion for summary judgment on Plaintiff's breach of warranty claim is granted as the contract expressly waived any warranties.

## Conclusion

Therefore, the Court grants Defendant's Motion on Plaintiff's claims for negligence and breach of warranty and denies Defendant's Motion on Plaintiff's claims for breach of contract and gross negligence.

IT IS SO ORDERED.

___7/17/06___
Date

_Christopher A. Boyko_
CHRISTOPHER A. BOYKO
United States District Judge

13